[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 18-12679

————————————————

ART ROJAS,
LUCINDA HALE,

                                            Plaintiffs-Appellees,

*versus*

CITY OF OCALA, FLORIDA,

                                            Defendant-Appellant,

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:14-cv-00651-TJC-PRL

————————————————

Before NEWSOM, TJOFLAT, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

In response to a shooting spree that caused injuries to several children, the City of Ocala's Police Chief, along with some of his employees and volunteer police chaplains, worked with a community activist to organize and sponsor a prayer vigil in the town square.

The police department posted a letter on its Facebook page, urging citizens to attend the vigil and fervently pray. The letter, which was jointly signed by the Chief and the community activist, was on the department's letterhead. The top of the page had an image of a police badge with "OCALA POLICE DEPARTMENT" underneath that image, and the department's address and phone number were at the bottom of the page.

After seeing the department's Facebook posting, several Marion County residents who are humanists or atheists attended the vigil where police chaplains appeared onstage praying and singing while wearing their department-issued uniforms. Those residents later filed a lawsuit against the chief of police, the mayor, and the City, alleging a First Amendment Establishment Clause violation. They sought nominal damages, costs, and attorney's fees.

The district court granted summary judgment to the plaintiffs, and the City appealed. The issues are whether the plaintiffs

18-12679                 Opinion of the Court                      3

have standing and, if so, whether the City violated the Establishment Clause. We conclude the answers are "yes," and "maybe."[1]

_____

[1] Before addressing those two issues, we need to specify which original parties to this lawsuit are no longer parties to this appeal, and explain why. Jean Porgal was originally one of the plaintiffs, but she died while the case was proceeding in the district court. Plaintiff Daniel Hale died while this appeal was pending. The two plaintiffs who remain parties in this appeal are Art Rojas and Lucinda Hale, who is Daniel Hale's widow.

Mayor Reuben "Kent" Guinn was a defendant, but the district court granted summary judgment in his favor, and the plaintiffs have not challenged that. Chief of Police Greg Graham, who was a defendant, died while the appeal was pending. The parties filed a "Joint Notice Regarding Suggestion of Death of Select Parties and Impact on this Appeal," which asserted that none of the parties' deaths had any impact on the appeal, including the death of Chief Graham. The joint notice also stated that the proper party defendant was Chief Graham's successor as chief of police, citing for that proposition Federal Rule of Appellate Procedure 43(c)(2): "When a public officer who is a party to an appeal or other proceeding in an *official capacity* dies, . . . [his] successor is automatically substituted as a party." (emphasis added).

A motions panel issued an order indicating that for purposes of this appeal, there are two remaining defendants: the City of Ocala and its police chief, who is unnamed but is sued in his official capacity. There's a problem with that ruling. The district court dismissed with prejudice the official capacity claims against Chief Graham, agreeing with a magistrate judge's recommendation that those claims were, in effect, claims against the City. (The remaining claims against Chief Graham were in his individual capacity. The plaintiffs did not object to the magistrate judge's report, did not appeal the dismissal of the official capacity claims against Chief Graham, and did not substitute any party for Graham even after the district court gave them a deadline for doing so. As a result, there are no official capacity claims against the current Ocala chief of police, and he is *not* a party to this appeal. To the extent an earlier motions panel order held otherwise, we vacate that order. *See* 11th Cir. R. 27-1(g) ("A

## I.    Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). It "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood." *Id.* And it "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

Because it is jurisdictional and implicates the authority of a federal court to decide a case, we must consider standing first. *See Gardner v. Mutz*, 962 F.3d 1329, 1338–39 (11th Cir. 2020). The familiar requirements for Article III standing are: "(1) an injury in fact — an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the plaintiff's injury and the challenged action of the defendant; and (3) a likelihood, not merely speculation, that a favorable judgment will redress the injury." *Id.* at 1338 (cleaned up); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Lewis v. Governor of Ala.*,

---

ruling on a motion or other interlocutory matter, whether entered by a single judge or a panel, is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it."). The bottom line is that the City is the only remaining defendant involved in this appeal.

944 F.3d 1287, 1296 (11th Cir. 2019) (en banc).  In the present case, the standing requirement at issue is injury.

"For Establishment Clause claims based on non-economic harm, the plaintiffs must identify a 'personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.'"  *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003) (quoting *Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.*, 454 U.S. 464, 485 (1982)).  "In this type of case, plaintiffs have standing if they are directly affected by the laws and practices against which their complaints are directed."  *Id.* (alteration adopted and quotation marks omitted).

Lucinda Hale has alleged that she was directly affected by the prayer vigil and suffered an injury sufficient to confer standing to bring an Establishment Clause claim against the City of Ocala. *See Pelphrey v. Cobb Cnty.*, 547 F.3d 1263, 1279–80 (11th Cir. 2008) (holding that a plaintiff had standing based on "direct contact" with an allegedly offensive invocational prayer practice at Planning Commission meetings after he voluntarily attended three meetings in person and "watched numerous meetings" on the internet).

These are the facts at this stage of the proceedings.  Hale lives in Marion County (where Ocala is located) and had visited the Ocala downtown square "a number of times" before the prayer vigil took place, including going to the farmer's market there.  She heard about the prayer vigil when someone informed her and her

late husband about the Ocala Police Department's Facebook posting, and they then looked at that posting. She testified that "[c]rime creates an environment that's negative for all citizens," but she felt that the invitation to a community prayer vigil did not include her or others who do not pray.

Hale attended the prayer vigil and later testified that it was similar to a Christian revival. She is concerned about alleviating crime but felt unable to participate in the vigil because the speakers invited the audience only to pray and sing. Hale had attended the vigil because she wanted to observe it and also because she has an interest in being part of the community and is concerned about crime.

The district court determined that Hale had alleged "more than a mere interest in the matter," and because she was injured, she has standing to bring this lawsuit. *See ACLU of Ga. v. Rabun Cnty. Chamber of Com., Inc.*, 698 F.2d 1098, 1108 (11th Cir. 1983) ("Injury in fact serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.") (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973)) (cleaned up). We agree.

Hale's "contact is sufficient to establish the personal and individualized injury necessary for standing." *Pelphrey*, 547 F.3d at 1280. She voluntarily attended the prayer vigil and knew she would encounter religious practices she found offensive, but under Supreme Court precedent that does not mean she lacks standing to bring an Establishment Clause claim. *See Fed. Election Comm'n*

v. Cruz, 142 S. Ct. 1638, 1647 (2022) ("[W]e have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred."). Because Hale has standing, we need not decide whether Rojas also does. See Pelphrey, 547 F.3d at 1280 ("Because one plaintiff has standing, we need not consider whether the other plaintiffs had sufficient contact with the offensive practice to establish standing.").

## II.    The Merits

When the district court granted summary judgment, it believed that the analytical framework articulated in Lemon v. Kurtzman, 403 U.S. 602 (1971), was the controlling law. Even though many Justices soured on Lemon over the years, the Court seemingly could not rid itself of that much-maligned decision. Justice Scalia colorfully described Lemon as "[l]ike some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried." Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment, joined by Thomas, J.). Because the district court and the parties believed that Lemon was still shuffling about at the time, the court applied it in concluding that there was an Establishment Clause violation in this case. See Doc. 88-1 at 31 (noting that the parties all agreed that Lemon applied); id. at 31–38, 60 (applying Lemon, concluding that the prayer

vigil "failed each of [its] three prongs," and then addressing whether the prayer vigil was a government-sponsored event).

After this appeal was filed, however, the Supreme Court drove a stake through the heart of the ghoul and told us that the *Lemon* test is gone, buried for good, never again to sit up in its grave. Finally and unambiguously, the Court has "abandoned *Lemon* and its endorsement test offshoot." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427 (2022). In the course of doing so, the Court asserted that it had already done it — "long ago," *id.* — which was news to a third of the Court's Justices, *see id.* at 2434 (Sotomayor, J., dissenting, joined by Breyer and Kagan, JJ.) ("Today's decision . . . overrules *Lemon* . . . .").

Regardless of exactly when the ghastly decision was dispatched for good, the Supreme Court has definitively decided that *Lemon* is dead — long live historical practices and understandings. *See id.* at 2428 (majority opinion) ("In place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by reference to historical practices and understandings.") (quotation marks omitted).

We remand this case to the district court to give it an opportunity to apply in the first instance the historical practices and understandings standard endorsed in *Kennedy*. *See Nat'l R.R. Passenger Corp. v. State of Fla.*, 929 F.2d 1532, 1538 (11th Cir. 1991) (remanding for the district court to consider the effect of recent changes in the law).

18-12679               Opinion of the Court                           9

**VACATED AND REMANDED.**