# SUPREME COURT OF THE UNITED STATES

CITY OF OCALA, FLORIDA *v.* ART ROJAS, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 22–278.   Decided March 6, 2023

The petition for a writ of certiorari is denied.

Statement of JUSTICE GORSUCH respecting the denial of certiorari.

Faced with tragedy, the city of Ocala, Florida, searched for ways to bring the community together. After a shooting spree left several children injured, police appealed to community leaders for help. A local NAACP official suggested to the chief of police that he contact religious leaders to facilitate conversations between residents and law enforcement. A local minister, in turn, proposed holding a prayer vigil for the victims. The chief agreed to organize the event and police chaplains participated in it.

But instead of unity, litigation followed. Several atheists who chose to attend the event sued the city, alleging that the event's religious themes violated the First Amendment's Establishment Clause. Eventually, the District Court granted summary judgment in their favor. 315 F. Supp. 3d 1256, 1290 (MD Fla. 2018). The court reasoned that individuals enjoy Article III standing to contest religious speech they find offensive and that the vigil violated the Establishment Clause under the terms of *Lemon* v. *Kurtzman*, 403 U. S. 602 (1971). 315 F. Supp. 3d, at 1274–1290.

On appeal, the Eleventh Circuit agreed that at least one of the plaintiffs had standing to sue, noting that she had "'direct contact'" with prayer she found "offensive." 40 F. 4th 1347, 1350–1351 (2022). It didn't matter that the

plaintiff went to the vigil *knowing* that she would be of-
fended. *Ibid.* What mattered was that prayers reached her
ears. *Ibid.* Still, the Eleventh Circuit vacated the District
Court's decision on the merits, remanding the case for re-
consideration in light of this Court's intervening decision in
*Kennedy* v. *Bremerton School Dist.*, 597 U. S. ___ (2022). 40
F. 4th, at 1351–1352.

I do not doubt that the District Court must reconsider the
merits. As this Court explained in *Kennedy*, the *Lemon* test
on which the District Court relied is no longer good law. 597
U. S*.,* at ___ (slip op., at 22). But the question of standing
must be reconsidered too. This Court has never endorsed
the notion that an "offended observer" may bring an Estab-
lishment Clause claim. *American Legion* v. *American Hu-
manist Assn.*, 588 U. S. ___, ___ (2019) (GORSUCH, J., con-
curring in judgment) (slip op., at 6). Elsewhere in the law,
we routinely say that Article III demands a more "'concrete
and particularized'" injury. *Id.*, at ___ (slip op., at 2). And
the same rule, we have said, applies in the Establishment
Clause context too. *Id.,* at ___ (slip op., at 5) (discussing
*Valley Forge Christian College* v. *Americans United for Sep-
aration of Church and State, Inc.*, 454 U. S. 464 (1982)).

Why, despite these teachings, have some lower courts in-
dulged the fiction of "offended observer" standing? At least
some of the fault "lies here." *American Legion,* 588 U. S., at
___ (opinion of GORSUCH, J.) (slip op., at 6). In *Lemon*, this
Court suggested that "the Establishment Clause forbids an-
ything a reasonable observer would view as an endorse-
ment of religion." *American Legion*, 588 U. S., at ___–___
(opinion of GORSUCH, J.) (slip op., at 6–7). For this to be so,
lower courts deduced, "such an observer must be able to
sue." *Id.,* at ___–___ (slip op., at 7–8) (citing lower court
cases).

But if that logic ever made sense, it no longer does. In
*Kennedy*, this Court put to rest any question about *Lemon*'s
vitality. We held that claims alleging an establishment of

religion must be measured against the Constitution's original and historical meaning, not the sensitivities of a hypothetical reasonable observer. 597 U. S., at \_\_\_ (slip op., at 22). And with the demise of *Lemon*'s reasonable observer test, "little excuse" now remains "for the anomaly of offended observer standing." *American Legion*, 588 U. S., at \_\_\_ (opinion of GORSUCH, J.) (slip op., at 9). "[T]he gaping hole it tore in standing doctrine in [the lower courts] should now begin to close." *Ibid.*

　The city asks us to take this case to make just this point. It is an understandable request. But I see no need for the Court's intervention at this juncture. This case remains in an interlocutory posture—the Eleventh Circuit has remanded the case to the District Court to permit it to consider *Kennedy*'s implications in the first instance. I would allow that process to unfold. Moving forward, I expect lower courts will recognize that offended observer standing has no more foundation in the law than the *Lemon* test that inspired it. If I am wrong, the city is free to seek relief here after final judgment. For by now it should be clear that, "[i]n a large and diverse country, offense can be easily found. Really, most every governmental action probably offends *somebody*. No doubt, too, that offense can be sincere, sometimes well taken, even wise. But recourse for disagreement and offense does not lie in federal litigation. Instead, in a society that holds among its most cherished ambitions mutual respect, tolerance, self-rule, and democratic responsibility, an 'offended viewer' may 'avert his eyes' or pursue a political solution." *American Legion*, 588 U. S., at \_\_\_ (slip op., at 11) (opinion of GORSUCH, J.) (citation omitted).

# SUPREME COURT OF THE UNITED STATES

CITY OF OCALA, FLORIDA *v.* ART ROJAS, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 22–278.   Decided March 6, 2023

JUSTICE THOMAS, dissenting from denial of certiorari.

In 2014, a shooting spree in Ocala, Florida, left several children injured. In response, the city of Ocala's police department worked with community leaders to identify suspects and witnesses. Leaders of the religious community suggested holding a prayer vigil in the town square to bring the community together and encourage potential witnesses to cooperate. The chief of police agreed and posted a letter on the department's public Facebook page asking citizens to attend a prayer vigil for the victims. At the vigil, uniformed police chaplains appeared onstage alongside community religious leaders, all singing and praying for the injured children.

Respondents, several atheists who voluntarily attended the vigil with full knowledge of its religious content, sued the city and several officials under Rev. Stat. §1979, 42 U. S. C. §1983. They alleged that they felt uncomfortable and unable to participate at the vigil because of its Christian themes, and that the city had violated the Establishment Clause. The District Court granted summary judgment to respondents, holding that they had Article III standing and that the vigil violated the Establishment Clause under the *Lemon* test. See *Lemon* v. *Kurtzman*, 403 U. S. 602 (1971). Applying Circuit precedent, the Eleventh Circuit agreed that at least one respondent had standing because she came into "'direct contact'" with the vigil, 40 F. 4th 1347, 1350 (2022), but it remanded on the merits in light of our express abandonment of *Lemon* last Term in *Kennedy* v. *Bremerton School Dist.*, 597 U. S. \_\_\_, \_\_\_–\_\_\_

(2022) (slip op., at 22–23).

Although the Eleventh Circuit was correct that *Lemon* is no longer good law, we should have granted certiorari to review whether respondents had standing to bring their claims. Standing is an antecedent jurisdictional requirement that must be established before a court reaches the merits. *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 94–95 (1998). It thus makes no difference that the court below remanded based on *Kennedy*, and it may make no difference if the District Court holds for petitioner on the merits. Courts have no constitutional authority to pass on the merits of a case beyond their jurisdiction—"to do so is, by very definition, for a court to act ultra vires." 523 U. S., at 102. "Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Id.*, at 101. "This tenet is as solid as bedrock and almost as old." *Cross-Sound Ferry Servs., Inc.* v. *ICC*, 934 F. 2d 327, 339 (CADC 1991) (Thomas, J., concurring in part and concurring in denial of petition for review). Because standing based on mere offense is in significant tension with Article III and our precedents, I would have granted certiorari to determine whether the courts below lacked jurisdiction.

I have serious doubts about the legitimacy of the "offended observer" theory of standing applied below. See *American Legion* v. *American Humanist Assn.*, 588 U. S. ___, ___, ___, ___ (2019) (GORSUCH, J., concurring in judgment) (slip op., at 2, 5, 6) (noting that the doctrine "has no basis in law," is "deeply inconsistent . . . with many . . . longstanding principles and precedents," and "cannot be squared with this Court's longstanding teachings about the limits of Article III"). For decades, members of the Judiciary have noted that offended observer standing appears to

be flatly inconsistent with our opinion in *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.*, 454 U. S. 464 (1982). In that case, we held "that 'the psychological consequence presumably produced by observation of religious conduct with which one disagrees' is 'not an injury sufficient to confer standing under Article III, even though the disagreement is phrased in constitutional terms.'" *Kondrat'yev* v. *Pensacola*, 949 F. 3d 1319, 1335 (CA11 2020) (Newsom, J., concurring) (quoting 454 U. S., at 485–486; alterations omitted); see also *American Legion*, 588 U. S., at \_\_\_ (opinion of GORSUCH, J.) (slip op., at 5); *Freedom From Religion Foundation, Inc.* v. *Mack*, 49 F. 4th 941, 949 (CA5 2022) (Smith, J.) ("[T]he law of Establishment Clause standing is hard to reconcile with the general principle that standing is absent where a plaintiff has only a generalized grievance shared in substantially equal measure by all or most citizens" (internal quotation marks omitted)); *Freedom From Religion Foundation, Inc.* v. *Obama*, 641 F. 3d 803, 807 (CA7 2011) (Easterbrook, C. J.) ("[H]urt feelings differ from legal injury"); *Barnes-Wallace* v. *San Diego*, 530 F. 3d 776, 795 (CA9 2008) (Kleinfeld, J., dissenting) ("[B]eing there and seeing the offending conduct does not confer standing"); *Doe* v. *Tangipahoa Parish School Bd.*, 494 F. 3d 494, 500 (CA5 2007) (DeMoss, J., specially concurring) (explaining that offended observer standing "opens the courts' doors to a group of plaintiffs who have no complaint other than they dislike any government reference to God"); *American Civil Liberties Union of Ohio Foundation, Inc.* v. *Ashbrook*, 375 F. 3d 484, 497 (CA6 2004) (Batchelder, J., dissenting) (explaining that standing based on "unwelcome contact" with governmental religious displays is "inconsistent with . . . *Valley Forge*"); *Washegesic* v. *Bloomingdale Public Schools*, 33 F. 3d 679, 684–685 (CA6 1994) (Guy, J., concurring) (explaining that offended observer standing "establishe[s] . . . a class of 'eggshell'

plaintiffs of a delicacy never before known to the law"); *Penkoski* v. *Bowser*, 486 F. Supp. 3d 219, 231 (DC 2020) (McFadden, J.) (explaining that offended observer standing "cannot be squared with" *Valley Forge*).

Offended observer standing appears to warp the very essence of the judicial power vested by the Constitution. Under Article III, federal courts are authorized "to adjudge the legal rights of litigants in actual controversies," not hurt feelings. *Valley Forge*, 454 U. S., at 471 (internal quotation marks omitted); see also *In re Navy Chaplaincy*, 534 F. 3d 756, 763 (CADC 2008) ("[M]ere personal offense to government action does not give rise to standing to sue" (citing *Allen* v. *Wright*, 468 U. S. 737, 752–754 (1984)); J. Davis & N. Reaves, Fruit of the Poisonous *Lemon* Tree: How the Supreme Court Created Offended-Observer Standing, and Why It's Time for It To Go, 96 Notre Dame L. Rev. Reflection 25, 35–36 (2020) ("Under a historical understanding of Article III," "psychological offense resulting merely from seeing [challenged government] action does not qualify" as "concrete harm"). In every other area, we have been clear that "offense alone [is] insufficient to convey standing." *American Legion*, 588 U. S., at ___ (opinion of GORSUCH, J.) (slip op., at 3); see also *Kondrat'yev*, 949 F. 3d, at 1337 (Newsom, J., concurring) ("[T]he Supreme Court has long rejected allegations of offense, fear, and stigma as sufficient to establish standing"). And, we admonished in *Valley Forge* that there is "no principled basis on which to create a hierarchy of constitutional values or a complementary 'sliding scale' of standing." 454 U. S., at 484. Yet offended observer standing seems to do just that by "carv[ing] out [a] special exceptio[n] to the rules governing standing for Establishment Clause claims." *Ashbrook*, 375 F. 3d, at 496 (Batchelder, J., dissenting); see also *Penkoski*, 486 F. Supp. 3d, at 233–234.

*Valley Forge* could not have been clearer that a relaxed standing doctrine "does not become more palatable when

the underlying merits concern the Establishment Clause." 454 U. S., at 489. Nonetheless, we have muddied the waters by repeatedly reaching the merits of Establishment Clause cases premised upon offended observer standing in the courts below. *American Legion*, 588 U. S., at ___ (opinion of GORSUCH, J.) (slip op., at 5). Fortunately, "'drive-by jurisdictional rulings of this sort' carry 'no precedential effect.'" *Ibid.* (quoting *Steel Co.*, 523 U. S., at 91; alteration omitted). But we should not "continue to hold expressly that the injury in fact requirement is no different for Establishment Clause cases, while . . . implicitly assum[ing] standing in" those cases based on an injury that, "in a non-Establishment Clause case, would not get the plaintiff into the courthouse." *Doe*, 494 F. 3d, at 500 (DeMoss, J., specially concurring). Nor should we continue to countenance the undermining of our well-reasoned *Valley Forge* precedent by the Courts of Appeals.

This Court's intervention has become increasingly necessary, as time has demonstrated that this problem is not going away by itself. Even those Courts of Appeals that recognize the apparent illegitimacy of offended observer standing now find themselves bound by Circuit precedent to apply it. See *Kondrat'yev*, 949 F. 3d, at 1337 (Newsom, J., concurring) ("[W]e should . . . convene en banc in order to bring our own Establishment Clause standing precedent into line with the Supreme Court's"); *Mack*, 49 F. 4th, at 949 ("[C]orrect or not, our [offended observer] precedents bind us"); *Freedom From Religion Foundation, Inc.* v. *County of Lehigh*, 933 F. 3d 275, 280 (CA3 2019) (Hardiman, J.) ("We . . . leave it to the Supreme Court—or this Court sitting en banc—to determine whether to discard" offended observer standing). And, anomalous exceptions that expand an institution's power have a tendency to swallow rules that limit it. The same is true here: Far from naturally receding, offended observer standing threatens to di-

lute Article III requirements in other areas.  See, *e.g.*, *Gerber* v. *Herskovitz*, 14 F. 4th 500, 506 (CA6 2021) (employing a direct analogy to offended observer cases to hold that individuals had standing to bring various federal statutory, due process, and free exercise claims solely because they suffered psychological harm from alleged legal violations).  We should reconsider this seeming aberration before it further erodes bedrock Article III restrictions on the judicial power.

   Decades ago, I joined Chief Justice Rehnquist in a dissent from denial of certiorari that recognized the tension between standing based on religious offense and *Valley Forge*.  *City of Edmond* v. *Robinson*, 517 U. S. 1201, 1202–1203 (1996).  At the time, Chief Justice Rehnquist lamented the Court's failure to confront this undeniably important question that "determines the reach of federal courts' power of judicial review of state actions."  *Id.*, at 1203.  Time has vindicated this exhortation, and I continue to urge the Court to review the legitimacy of this form of standing.  If the Courts of Appeals are unwilling to reconsider their offended observer precedents en banc, we should intervene to vindicate our holding in *Valley Forge*.