[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10461
_____

D.C. Docket No. 8:18-cv-02843-VMC-JSS


WADE STEVEN GARDNER,
MARY JOYCE STEVENS,
RANDY WHITTAKER,
In Official Capacity at Southern War Cry,
VETERANS MONUMENTS OF AMERICA, INC.,
Andy Strickland, US Army Ret, President,
PHIL WALTERS,
In his Official Capacity as 1st Lt. Commander of the
Judah P. Benjamin Camp # 2210 Sons of Confederate Veterans,
KEN DANIEL,
In his Official Capacity as Director of
Save Southern Heritage, Inc. Florida,
RANDY WHITTAKER,
Individually,

Plaintiffs - Appellants,

versus

WILLIAM MUTZ,
In his Official Capacity as Mayor of the City of Lakeland, Florida,
TONY DELGADO,
In his Official Capacity as Administrator of the City of Lakeland, Florida,
DON SELVEGE,
In his Official Capacity as City of Lakeland, Florida Commissioner,
JUSTIN TROLLER,
In his Official Capacity as City of Lakeland, Florida Commissioner,

PHILLIP WALKER,
In his Official Capacity as City of Lakeland, Florida Commissioner,
FLORIDA SECRETARY OF STATE, et al.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 22, 2020)

Before MARTIN, NEWSOM, and O'SCANNLAIN,* Circuit Judges.

NEWSOM, Circuit Judge:

This appeal arises from a lawsuit filed by a group of individuals and organizations who object to the City of Lakeland's decision to relocate a Confederate monument from one city park to another. As relevant here, the plaintiffs contend that the relocation violates their rights under the First Amendment's Free Speech Clause and the Fourteenth Amendment's Due Process Clause. The district court rejected the plaintiffs' First Amendment claim on the merits and dismissed it with prejudice; the court dismissed the plaintiffs' due process claim without prejudice on the ground that they lacked the requisite standing to pursue it.

---

* Honorable Diarmuid F. O'Scannlain, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

Following the district court's decision, the plaintiffs failed to obtain (or even seek) a stay, and, by the time the case reached us the City had proceeded to relocate the monument. On appeal, the plaintiffs challenge the dismissal of their complaint, and the defendants respond by contesting the plaintiffs' standing to sue, defending the district court's decision on the merits, and contending that the monument's relocation has rendered the case moot. We hold that the plaintiffs lack standing to pursue either their First Amendment claim or their due process claim. Accordingly, we will vacate and remand the with-prejudice dismissal of the plaintiffs' First Amendment claim, with instructions that the district court should dismiss without prejudice for lack of jurisdiction, and we will affirm the district court's without-prejudice dismissal of the plaintiffs' due process claim.

## I

### A

The plaintiffs in this case are Wade Steven Gardner, a citizen-taxpayer of Lakeland; Randy Whittaker, a citizen-taxpayer of Polk County who has, he says, "Confederate Dead in his family lineage"; Southern War Cry, an organization that Whittaker administers; the Judah P. Benjamin Camp #2210 Sons of Confederate Veterans, a subdivision of the nonprofit Florida Division Sons of Confederate Veterans, Inc., whose self-described purpose is to "'vindicate the cause' for which the Confederate Veteran fought"; Veterans Monuments of America, Inc., a nonprofit entity dedicated to protecting and preserving war memorials; Mary Joyce

3

Stevens, a Georgia resident and a current member and past president of a chapter of the United Daughters of the Confederacy; and Save Southern Heritage, Inc., a South Carolina nonprofit formed to "preserve the history of the south for future generations."

Most of the defendants in this case are affiliated either with the City of Lakeland or the State of Florida. The City-related defendants are William Mutz, Lakeland's Mayor; Don Selvage, Justin Troller, and Phillip Walker, Lakeland City Commissioners; and Tony Delgado, the City Manager. The plaintiffs also sued Michael Ertel, the Florida Secretary of State,[1] and Antonio Padilla, the President of Energy Services & Products Corporation, which had submitted a proposal for relocating the monument.

This case centers on a memorial "cenotaph"[2] that is dedicated to Confederate soldiers who died during the Civil War and is—or more accurately, *was*—located in Lakeland's Munn Park, which is a part of a nationally registered historic district. In 1908, the City granted the United Daughters of the Confederacy's petition to erect the monument in Munn Park. The cenotaph is 26 feet tall, weighs about 14 tons, and is engraved with the words "Confederate Dead," a poem, and images of Confederate flags. More recently, the City began to

---

[1] Ertel replaced his predecessor in office, Kenneth Detzner.

[2] A cenotaph is "[a]n empty tomb or a monument erected in honor of a person who is buried elsewhere." *Webster's Second New International Dictionary* 433 (1934).

4

receive complaints about the monument, and in December 2017 the City Commission agreed to start the process of removing it.  In May 2018, the Commission voted to relocate the cenotaph from Munn Park to Veterans Park, which is located outside Lakeland's historic district.  The Commission initially directed that all relocation costs be paid by private donations, but it later agreed to permit the use of funds from Lakeland's red-light-camera program to complete the project.

**B**

In November 2018, the plaintiffs sued to prevent the cenotaph's relocation.  Of their complaint's seven counts, only two are at issue here:  Count 1 alleged a violation of the plaintiffs' First Amendment rights—in particular, the plaintiffs complained, the City "ha[d] abridged [their] right to free speech . . . by deciding to remove the [c]enotaph which communicated minority political speech in a public forum."  Count 4 alleged a violation of the Due Process Clause—specifically, the plaintiffs asserted that the City failed "to provide [them] and other like-minded Florida and American citizens due process, including reasonable notice, an opportunity to be heard and a hearing before a neutral arbiter, before removing the Historic Munn Park Cenotaph."[3]  The plaintiffs requested both a declaration that

_____

[3] The counts not relevant to this appeal are as follows:  Count 2 alleged a breach of a bailment agreement between the city and the United Daughters of the Confederacy; Count 3 alleged various "[v]iolation[s] of public trust"; Count 5 alleged a violation of Lakeland's Historic

5

the City's actions violated the Constitution and an injunction to prevent the monument's relocation.

The defendants moved to dismiss the plaintiffs' suit.  In their motion, Mutz, Delgado, Selvage, Troller, and Walker argued that the plaintiffs lacked standing, that they had failed to state a claim for which relief could be granted, and that, in any event, their claims were barred by legislative and/or qualified immunity.  In particular, the defendants contended that the plaintiffs hadn't suffered an "injury in fact" because they didn't have a "cognizable claim arising out of the City's relocation or removal of a monument on City property."  More particularly still, they argued that the cenotaph was a form of government speech and that, accordingly, the plaintiffs didn't have a "Free Speech claim with respect to [it] or any due process rights premised on [its] removal."  Ertel and Padilla moved to dismiss on similar grounds.

The district court granted the defendants' motions.  With respect to the plaintiffs' First Amendment claim, the court opted to treat the City officials' motion to dismiss for lack of subject-matter jurisdiction as a motion to dismiss for failure to state a claim; for support, the court invoked the proposition that when a defendant's jurisdictional challenge "implicates an element of the cause of action,

---

Preservation Ordinance; and Counts 6 and 7 alleged intent and collusion to violate two Florida statutes.

6

courts are to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  Dist. Ct. Order at 9 (internal quotation marks omitted) (quoting *Scarfo v. Ginsberg*, 175 F.3d 957, 965 (11th Cir. 1999) (Barkett, J., dissenting)).  Having refocused the inquiry from the plaintiffs' standing to the merits of their claim, the district court held that the cenotaph is not private expression but rather a form of government speech and, accordingly, that the "[p]laintiffs d[id] not have a legally protected interest in that speech" and that "their First Amendment claim fail[ed] as a matter of law."  *Id.* at 9–11.  The court rejected the plaintiffs' due process claim on standing grounds, holding that "[e]ven if [p]laintiffs had a protected liberty or property interest in the [c]enotaph's placement in Munn Park," their alleged injuries were "not sufficiently particularized" for Article III purposes.  *Id.* at 12–13 (internal quotation marks and citation omitted).[4]  The district court alternatively held that the plaintiffs had failed to state a cognizable due process claim because they "lack[ed] a liberty interest in the [c]enotaph and thus [could not] state a procedural due process claim based on the memorial's relocation."  *Id.* at 15.[5]

---

[4] The court separately rejected the plaintiffs' contention that Gardner had standing as a municipal taxpayer on the ground that no tax dollars had been spent on the relocation.

[5] Because it dismissed all of the plaintiffs' federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims.  Although they referenced their state-law claim against the Secretary of State in their notice of appeal, the plaintiffs have offered no challenge to the district court's decision to decline supplemental jurisdiction.  Because the

The plaintiffs promptly appealed the district court's dismissal order to this Court. For whatever reason, though, they failed to seek a stay pending appeal to prevent the relocation of the cenotaph while the case wound its way to us, and, in the meantime, the City of Lakeland proceeded to move the monument from Munn Park to Veterans Park. In light of the cenotaph's relocation, the defendants argue that because "the action [the plaintiffs] sought to prevent has come to pass, the case is now moot." Br. of Appellees at 12.

## II

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, we have "a special obligation to satisfy [ourselves] . . . of [our] own jurisdiction" before proceeding to the merits of an appeal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks and citation omitted). The most notable—and most fundamental—limits on the federal "judicial Power" are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of "Cases" and "Controversies." U.S. Const. art. III, § 2. This case-or-controversy requirement comprises three familiar "strands":

---

plaintiffs haven't contested the issue in their briefs, it is abandoned. *See United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001).

8

(1) standing, (2) ripeness, and (3) mootness. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011).[6]

Two case-or-controversy requirements—standing and mootness—are at issue in this case: The district court held that the plaintiffs lacked standing to pursue their due process claims, and the same basic considerations that animated its decision call into question the plaintiffs' standing to litigate their First Amendment claims. And separately, in light of the cenotaph's removal from Munn Park during the pendency of the appeal, the defendants contend that the case is now moot.

So, a threshold question about threshold questions: Which to assess first? The Supreme Court has clarified that a reviewing court can "choose among threshold grounds for denying audience to a case on the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999), and we have routinely availed ourselves of that flexibility, *see, e.g.*, *Cook v. Bennett*, 792 F.3d 1294, 1298–99 (11th Cir. 2015) (addressing standing, then mootness); *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1302 (11th Cir. 2007) (addressing mootness, then standing); *Tanner Advert. Grp., L.L.C. v. Fayette County*, 451 F.3d 777, 785 (11th Cir. 2006) (same); *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA*,

---

[6] Or perhaps four. *Cf. Made in the USA Found. v. United States*, 242 F.3d 1300, 1312 (11th Cir. 2001) ("The political question doctrine emerges out of Article III's case or controversy requirement and has its roots in separation of powers concerns.").

386 F.3d 1070, 1082–88 (11th Cir. 2004) (addressing standing, then mootness). Here, for several reasons, we think it best to start with standing.

First, and perhaps most obviously, standing was—at least in part, anyway—the basis of the district court's decision below. As we'll explain shortly, in addressing the plaintiffs' First Amendment claim, the district court improperly conflated the standing and merits inquiries. But even so, that court perceived and addressed potential problems with the plaintiffs' standing to sue, and it makes sense for us to pick up that thread. Mootness issues, by contrast, arose only during the pendency of this appeal, when the plaintiffs failed to seek a stay and the defendants proceeded to relocate the cenotaph. *Cf. KH Outdoor, L.L.C.*, 482 F.3d at 1301–02 (exercising discretion to address mootness before standing where mootness had been at issue below).

Second, as we have observed before, standing is "perhaps the most important," *Fla. Pub. Interest*, 386 F.3d at 1083 (internal quotation marks and citation omitted)—or, alternatively, the "most central," *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003)—of Article III's jurisdictional prerequisites. Why so? One reason, which distinguishes standing from its Article III running buddies, is that whereas ripeness and mootness are fundamentally temporal—ripeness asks whether it's too soon, mootness whether it's too late—standing doesn't arise and evanesce; rather, it "limits the category of litigants empowered to maintain a

10

lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing asks, in short, whether a particular plaintiff even has the requisite stake in the litigation to invoke the federal "judicial Power" in the first place. U.S. Const. art. III, § 2. So, to compare the doctrines at issue here, the plaintiff whose suit goes moot once had a "Case" but lost it due to the march of time or intervening events, whereas the plaintiff who lacks standing never had a "Case" to begin with.

Finally—and as a purely practical matter—at least in this case the standing inquiry is more straightforward than the mootness inquiry. Assessing the plaintiffs' standing simply requires us to determine whether their alleged injuries— violations of their interests in "preserv[ing] the history of the south," "expressing their free speech[] from a Southern perspective," "'vindicat[ing] the cause' for which the Confederate Veteran fought," and "protect[ing] and preserv[ing] Memorials to American veterans"—constitute Article-III-cognizable harms. Assessing mootness, by contrast, could get messy. Very briefly, the defendants contend that the cenotaph's removal from Munn Park moots the case, because the very thing that the plaintiffs sought to prevent has now occurred—and in large part, they add, because the plaintiffs failed to obtain (or even seek) a stay pending appeal. Seems right. But, the plaintiffs respond—not without some force—this isn't a situation that "no longer presents a live controversy with respect to which

11

the court can give meaningful relief," *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks and citation omitted), because even now a court could grant them exactly what they want just by ordering the cenotaph moved *back* to Munn Park.[7]  Makes sense.  But alas, it's not quite that simple, either—we have deemed cases moot despite the theoretical availability of relief where (as here) the requested remedy would be impracticable or exceedingly expensive, and especially where (as here) the appealing party failed to seek a stay.  *See, e.g.*, *Fla. Wildlife Fed. v. Goldschmidt*, 611 F.2d 547, 549 (5th Cir. 1980).  *But see, e.g.*, *Chafin v. Chafin*, 568 U.S. 165, 175 (2013) (holding that a case was not moot because "[n]o law of physics prevent[ed]" the plaintiff from receiving the relief requested, even if it seemed unlikely).

     As our tennis-match-ish recitation demonstrates, the mootness question here is hardly cut and dried.  All the more reason, we think, to proceed directly to the simpler and more straightforward standing issue.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (expressing approval of

---

[7] This case is different from the usual monument-related dispute, which is brought by a plaintiff who wants a monument moved—rather than, as here, plaintiffs who want to prevent removal. *See, e.g.*, *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2074 (2019); *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1321–22 (11th Cir. 2020).  In that more typical scenario, removal moots the case because the plaintiff has gotten exactly what he sought. *See, e.g.*, *Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007).

taking "the less burdensome course" when faced with competing grounds for dismissal).[8]

＊  ＊  ＊

For the reasons explained below, we conclude that the plaintiffs have not established Article III standing to pursue their First Amendment or due process claims, which we'll discuss in turn. Because we can dispose of this case on standing grounds alone, we needn't—and won't—address either mootness or the merits.[9]

## III

Sitting en banc, we recently had occasion to clarify and reiterate a few foundational principles regarding plaintiffs' standing to sue. First, we observed that "Article III of the United States Constitution limits the 'judicial Power'—and thus the jurisdiction of the federal courts—to 'Cases' and 'Controversies,'" *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (quoting U.S. Const. art. III, § 2), and that "[t]he 'standing' doctrine is 'an essential and unchanging part of the case-or-controversy requirement," *id*. (quoting *Lujan v.*

---

[8] *Fla. Wildlife Fed'n, Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1324 (11th Cir. 2017) (Tjoflat, J., concurring) ("The necessary inquiry courts must make when deciding between available nonmerits grounds for dismissal is guided by a non-exhaustive and case-specific set of considerations. Those considerations may include convenience, fairness, the interests served by structural principles such as federalism and comity, and judicial economy and efficiency.").

[9] We review a district court's order granting a motion to dismiss de novo. *Mulhall v. Unite Here Local 355*, 667 F.3d 1211, 1213–14 (11th Cir. 2012).

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Second, we echoed the Supreme

Court's definitive recitation of the standing doctrine's three necessary

prerequisites: (1) "an 'injury in fact'—an invasion of a legally protected interest

that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not

conjectural or hypothetical'"; (2) "a 'causal connection' between [the plaintiff's]

injury and the challenged action of the defendant"; and (3) a "likel[ihood], not

merely speculati[on], that a favorable judgment will redress [the] injury."  *Id.*

(quoting *Lujan*, 504 U.S. at 560–61).  Finally, we underscored the fundamental

point that "[b]ecause standing to sue implicates jurisdiction, a court must satisfy

itself that the plaintiff has standing before proceeding to consider the merits of her

claim, no matter how weighty or interesting."  *Id.*

For the reasons that follow, we conclude that the plaintiffs here lack standing

to sue and, accordingly, that the federal courts lack jurisdiction to consider their

claims.

## A

We'll start with the plaintiffs' First Amendment claim.  First, though, a

brief—but we think important—detour.  In particular, before addressing the

plaintiffs' standing, we must pause to correct a methodological error in the district

court's analysis.  From the premises (1) that the defendants here had contended

that the plaintiffs "lack[ed] standing to assert their First Amendment claim because

14

the [c]enotaph is government speech" and (2) that the defendants' argument in that respect also went "to the merits of the First Amendment claim," the district court concluded that it should, in essence, sidestep the standing issue and proceed directly to the merits.  Having done so, the court held that under *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), the cenotaph was indeed a form of government speech that didn't trigger First Amendment protection, and it accordingly dismissed the plaintiffs' claims on the merits and with prejudice.

In bypassing standing to address the merits, the district court erred.  To repeat what we said recently in *Lewis*—repeating there what we had said many times before—"[b]ecause standing to sue implicates jurisdiction, a court *must* satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."  944 F.3d at 1296 (emphasis added); *accord, e.g.*, *Swann v. Secretary*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (quotation omitted)).  Indeed, the Supreme Court has expressly condemned the exercise of a so-called "'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt."  *Steel Co.*, 523 U.S. at 101.  "Hypothetical jurisdiction," the Court explained, "produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion."  *Id.*

15

The district court here seems to have gotten tripped up by language in some of our cases to the effect that if a defendant's jurisdictional challenge "implicates an element of the cause of action, courts are to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  Dist. Ct. Order at 9 (internal quotation marks omitted) (quoting *Scarfo v. Ginsberg*, 175 F.3d 957, 965 (11th Cir. 1999) (Barkett, J., dissenting)).  Two problems:  First, although the district court cited *Scarfo*, the language it quoted actually comes from Judge Barkett's *dissent* in that case.  (The majority there affirmed the dismissal of a case solely on subject-matter-jurisdiction grounds, refusing to look through to the merits.  *See* 175 F.3d at 958.)  That error, though—easy enough to make in the Westlaw age—was essentially harmless, as the same language appears in majority opinions that both predate and postdate *Scarfo*.  *See, e.g.*, *Morrison v. Amway Corp.*, 323 F.3d 920, 925, 929–30 (11th Cir. 2003); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s*, 104 F.3d 1256, 1261 (11th Cir. 1997).

The second problem with the district court's analysis isn't so easily shrugged off.  The principle embodied in the language that the district court quoted does not, as that court seemed to assume, create a broad-ranging exception to the *Steel Co.* rule—namely, that jurisdiction should be evaluated before, and separately from, the merits.  Rather, it applies only in a particular circumstance, not presented here.  We have distinguished between "facial" and "factual" attacks on subject-matter

16

jurisdiction. *See Morrison*, 323 F.3d at 924 n.5. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint," whereas "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 925 n.5. In adjudicating a facial attack, "the district court takes the allegations as true in deciding whether to grant the motion." *Id.* By contrast, when a court confronts a "factual" attack, it needn't accept the plaintiff's facts as true; rather, "the district court is free to independently weigh facts" and make the necessary findings. *Id.* at 925.

However—and now we're getting to the root of the district court's error—even in the context of a factual attack, an exception applies, thereby requiring the district court to accept the plaintiff's allegations as true, where a factual question underlying a challenge to the court's statutory jurisdiction also "implicate[s] the merits of the underlying claim." *Id.* That sort of "intertwine[ment]" occurs, we have said, "when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief'"— for instance, as in *Morrison*, where the defendant disputed the plaintiff's contention that he was an "eligible employee" within the meaning of the FMLA, a necessary prerequisite (under then-prevailing law) to both the court's statutory jurisdiction and the merits of the plaintiff's cause of action. *Id*. at 923, 926 (quoting *Garcia*, 104 F.3d at 1262); *accord Garcia*, 104 F.3d at 1258–62

17

(questioning whether the defendant was a covered "employer" within the meaning of the ADEA). It is in *those* unique instances, we have clarified—using the language the district court quoted here—that "[t]he proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (quoting *Garcia*, 104 F.3d at 1261).

This case, it seems to us, is (at least) thrice removed from that scenario. First, as the district court itself observed, here the defendants' "jurisdictional attack [wa]s based on the face of the pleadings"; they took "the allegations in the plaintiff[s'] complaint . . . as true for purposes of the motion" to dismiss and argued that the plaintiffs nonetheless lacked standing—and therefore that the federal courts lacked jurisdiction—as a matter of law. Dist. Ct. Order at 6. Second, the issue here is not *statutory* jurisdiction or standing, but rather whether the plaintiffs have satisfied the "irreducible constitutional minimum" standing requirements that emerge from Article III. *Lujan*, 504 U.S. at 560; *cf. Steel Co.*, 523 U.S. at 97 n.2 (distinguishing statutory-standing cases, in which the merits and jurisdictional inquiries may "overlap," from Article-III-standing cases, in which the jurisdictional question typically "has nothing to do with the text of [a] statute" (quotation omitted)). Finally, and in any event, there is—for reasons we will explain in greater detail below—no necessary overlap or "intertwine[ment]" here

18

between the merits of the plaintiffs' constitutional claims and their standing to sue. *Morrison*, 323 F.3d at 926.

Long story short: When the district court here bypassed standing issues and proceeded directly to the merits of the plaintiffs' First Amendment claim, it assumed its own jurisdiction in precisely the way that *Steel Co.* forbids. There were, we will see, independent and dispositive threshold standing issues that could (and should) have been decided first.

**B**

The "'[f]irst and foremost' of standing's three elements" is injury in fact. *Spokeo*, 136 S. Ct. at 1547 (alteration in original) (quoting *Steel Co.*, 523 U.S. at 103). And as already noted, to establish an injury in fact, a plaintiff must demonstrate, among other things, that he or she has suffered "an invasion of a legally protected interest that is both . . . 'concrete and particularized.'" *Lewis*, 944 F.3d at 1296 (quoting *Lujan*, 504 U.S. at 560). While they may be related concepts, concreteness and particularity are in fact "quite different." *Spokeo*, 136 S. Ct. at 1548. To pass Article III muster, a plaintiff's alleged injury must be *both* concrete and particularized. *See id.* As we will explain, the plaintiffs' injuries here are neither.

19

**1**

First, concreteness.  The Supreme Court recently clarified that to be concrete, an alleged injury must be "*de facto*" and "real"—and just as importantly, "not 'abstract.'"  *Id*. (quotations omitted).  And while a concrete injury needn't necessarily be "tangible," *id*. at 1549, the Court has consistently held that purely psychic injuries arising from disagreement with government action—for instance, "conscientious objection" and "fear"—don't qualify.  *See Diamond v. Charles*, 476 U.S. 54, 67 (1986); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417–18 (2013).

The plaintiffs' alleged injuries here are simply too "abstract" to implicate Article III.  Most generally, the plaintiffs assert that the City "abridged [their] right to free speech . . . by deciding to remove the [c]enotaph which communicated minority political speech in a public forum."  But surely the naked recitation of a constitutional claim isn't sufficient; if it were, every § 1983 plaintiff would, by definition, have standing to sue.  Somewhat (but not much) more specifically, the plaintiffs assert that the monument's relocation infringes their interests in "preserv[ing] the history of the south," "expressing their free speech[] from a Southern perspective," "'vindicat[ing] the cause' for which the Confederate Veteran fought," and "protect[ing] and preserv[ing] Memorials to American veterans."  But those injuries, too, are pretty amorphous.  What exactly is the (or a)

20

"Southern perspective"?  What exactly was "the cause for which the Confederate veteran fought," and what exactly does it mean to "vindicate" it?

At bottom, it seems to us, the plaintiffs endorse some meaning that they ascribe to the monument; they agree with what they take to be the cenotaph's message because it aligns with their values.  And because they agree with that message, they disagree with—object to—the monument's removal from Munn Park.  But the plaintiffs' inchoate agreement with what they take to be the cenotaph's meaning or message—and their consequent disagreement with the monument's relocation—does not alone give rise to a concrete injury for Article III purposes.  *Cf. Diamond*, 476 U.S. at 62 ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86 (1982) (holding that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms").

**2**

Even if the plaintiffs had articulated a concrete injury, they couldn't meet the standing doctrine's separate particularity requirement.  For an alleged injury to be sufficiently particularized to confer Article III standing, it must "affect the plaintiff

21

in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  Put slightly differently, the injury cannot be "undifferentiated," but rather must be "distinct" to the plaintiff.  *Spokeo*, 136 S. Ct. at 1548 (quotations omitted).  Accordingly, we have held, a plaintiff must show that she has been "directly affected apart from her special interest in the subject" at issue.  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (internal quotation marks and citation omitted).  If, instead, "the plaintiff is merely a 'concerned bystander,' then an injury in fact has not occurred."  *Id.* (quotation omitted).  "Article III standing," the Supreme Court has emphasized, "is not to be placed in the hands of concerned bystanders," because they "will use it simply as a vehicle for the vindication of value interests." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (internal quotation marks and citation omitted).

So again, back to the plaintiffs' allegations here.  They claim interests in "preserv[ing] the history of the south," "expressing their free speech[] from a Southern perspective," "'vindicat[ing] the cause' for which the Confederate Veteran fought," and "protect[ing] and preserv[ing] Memorials to American veterans."  But those interests are "undifferentiated," collective—not "distinct" to any of the plaintiffs.  *Spokeo*, 136 S. Ct. at 1548 (quotations omitted).  As the Supreme Court emphasized in *Sierra Club v. Morton*, "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified [an]

22

organization is in evaluating the problem, is not sufficient by itself." 405 U.S. 727, 739 (1972). Rather, "a party seeking review must allege facts showing that he is himself adversely affected." *Id.* at 740.

In *Sierra Club*, for example, an environmental organization sued under the Administrative Procedure Act to challenge development plans that would impact a national forest and park—it did so based on its "special interest in the conservation and the sound maintenance of the national parks, game refuges and forests of the country." *Id.* at 729–30 (internal quotation marks omitted). The Supreme Court acknowledged that "[a]esthetic and environmental well-being . . . are important ingredients of the quality of life in our society," and it observed that the mere "fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *Id*. at 734. But, the Court clarified, a plaintiff must establish more than just "an injury to a cognizable interest." *Id.* at 734–35. Instead, "the party seeking review [must] be himself among the injured." *Id*. at 735. The Court went on to hold that the organization's alleged injuries were insufficiently personal because it hadn't pleaded "that its members use[d the impacted land] for any purpose, much

23

less that they use[d] it in any way that would be significantly affected by the proposed actions."[10]  *Id.*

Just so here—aside from their "special interest in the subject[s]" of Confederate history, veterans memorials, and the so-called "Southern perspective," *Koziara*, 392 F.3d at 1305, the plaintiffs haven't shown that they have suffered a particularized Article III injury of the sort that distinguishes them from other interested observers and thus qualifies them, specifically, to invoke federal-court jurisdiction.  They don't allege, for example, that they (or, for the organizational plaintiffs, their members) routinely visited the monument in Munn Park or, alternatively, that they won't be able to visit the monument at its new location in Veterans Park.  Rather, their allegations implicate only the generalized desires to promote Southern history and to honor Confederate soldiers.  Accordingly, just as in *Sierra Club*, they haven't shown themselves—in particular—to be "among the injured," 405 U.S. at 735—or, in the words of *Hollingsworth*, that they are more than "concerned bystanders" attempting to vindicate their "value interests," 570 U.S. at 707 (internal quotation marks and citation omitted).

* * *

_____

[10] Perhaps sensing that their injuries as alleged in the complaint don't cut it, the plaintiffs on appeal articulated a different theory—namely, that we should adopt the reasoning underlying Justice Douglas's solo dissent in *Sierra Club*, and grant them standing to speak for inanimate objects like the cenotaph at issue here.  Needless to say, we can't do that.

24

We conclude, therefore, that the plaintiffs have not established Article III standing to pursue their First Amendment claim. Accordingly, we may not and do not proceed to the merits.[11]

## IV

The plaintiffs separately (and summarily) assert a violation of their rights under the Due Process Clause. The gist of their one-paragraph allegation is that the City failed "to provide [them] and other like-minded Florida and American citizens due process, including reasonable notice, an opportunity to be heard and a hearing before a neutral arbiter, before removing the Historic Munn Park Cenotaph."

Once again, we conclude that we are precluded from reaching the merits. The same standing deficiencies that sunk the plaintiffs' First Amendment claim— namely, that their alleged injuries are neither concrete nor particularized—doom their due process claim as well. As already explained, the plaintiffs assert interests in "preserv[ing] the history of the south," "'vindicat[ing] the cause' for which the Confederate Veteran fought," "protect[ing] and preserv[ing] Memorials to

---

[11] A brief procedural note: Because the district court rejected the plaintiffs' First Amendment claim on the merits, it dismissed that claim with prejudice. That was error; the court should have dismissed the claim on standing—*i.e.*, jurisdictional—grounds, and thus *without* prejudice. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (holding that the plaintiff lacked standing and remanding for reentry of dismissal order without prejudice in a case where a complaint was erroneously dismissed with prejudice).

25

American veterans," and "expressing their free speech[] from a Southern perspective." Those interests are simply too vague, inchoate, and undifferentiated to implicate Article III.[12]

## V

We hold that the plaintiffs have not alleged a concrete, particularized injury and that they therefore lack Article III standing. Accordingly, we lack jurisdiction to consider the merits of their claims.

With respect to the plaintiffs' First Amendment claim, we **VACATE AND REMAND** with instructions that the district court should dismiss without prejudice for lack of jurisdiction. We **AFFIRM** the district court's without-prejudice dismissal of the plaintiffs' due process claim**.**

---

[12] There are two loose ends, both of which pertain to Gardner's alleged standing as a Lakeland taxpayer. First, as the district court explained, "[t]he Complaint alleges that the City is using private donations as well as revenue from the City's red light camera program to fund the relocation of the [c]enotaph." So, according to the plaintiffs' own complaint, no tax money was actually used to relocate the monument. The plaintiffs separately asserted in their complaint that "Mayor Mutz reportedly used City Taxpayer funds to pay for the postage for a fundraising letter" aimed at raising private donations to move the cenotaph. They admit, though, that in response to a public-records request seeking information about these fundraising letters, the City clarified "that no public funds were used" to distribute them. Any attempt to establish taxpayer standing, therefore, is unavailing.

In their brief to us, the plaintiffs separately (but relatedly?) contend that the government defendants "use[d] a subterfuge to prevent assertion of taxpayer standing." We needn't address this issue, as it wasn't raised in the district court. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that "[t]his Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court" (internal quotation marks and citation omitted)).