[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13980
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cv-02843-VMC-JSS

WADE STEVEN GARDNER,
MARY JOYCE STEVENS,
RANDY WHITTAKER,
In Official Capacity at Southern War Cry,
VETERANS MONUMENTS OF AMERICA, INC.,
Andy Strickland, US Army Ret., President,
PHIL WALTERS,
In his Official Capacity as 1st Lt. Commander of the Judah P. Benjamin
Camp # 2210 Sons of Confederate Veterans,
KEN DANIEL,
In his Official Capacity as Director of Save Southern Heritage, Inc. Florida,
RANDY WHITTAKER,
Individually,

Plaintiffs-Appellants,

versus

WILLIAM MUTZ,
In his Official Capacity as Mayor of the City of Lakeland, Florida,
TONY DELGADO,
In his Official Capacity as Administrator of the City of Lakeland, Florida,
DON SELVEGE,
In his Official Capacity as City of Lakeland, Florida Commissioner,

JUSTIN TROLLER,
In his Official Capacity as City of Lakeland, Florida Commissioner,
PHILLIP WALKER,
In his Official Capacity as City of Lakeland, Florida Commissioner, et al.,

                                        Defendants-Appellees.

                    _____

              Appeal from the United States District Court
                 for the Middle District of Florida
                    _____

                        (May 24, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

        The facts of this case are familiar to the parties and were discussed at length

in this Court's earlier decision, *Gardner v. Mutz*, 962 F.3d 1329 (11th Cir. 2020).

        In short, the City of Lakeland, Florida, decided to relocate a Confederate

monument from one public park to another. *Id.* at 1334–35. A coalition of people

and groups dedicated to honoring the Confederacy sued the City. *Id.* at 1334.

They argued, as relevant here, that the relocation violated their First and

Fourteenth Amendment rights. *Id.* They argued that the City's action injured them

for Article III standing purposes because of their interests in preserving the history

of the South, expressing their free speech, vindicating the cause of the

Confederacy, and protecting and preserving memorials. *Id.* at 1341. The district

court dismissed the First Amendment claim on the merits and dismissed the

                                2

Fourteenth Amendment claim for lack of standing. *Id.* at 1335–36. The plaintiffs appealed but didn't seek a stay pending appeal. *Id.* at 1336. The City then relocated the monument while the case was on appeal. *Id.*

We held that the plaintiffs lacked standing to bring either federal claim. *Id.* at 1343. We reasoned that the plaintiffs' alleged injuries were insufficiently concrete and particularized to establish standing. *Id.* at 1341–43. We declined to decide whether the case had also become moot when the City moved the monument during the course of the appeal. *Id.* at 1338. We remanded to the district court with instructions to dismiss the case without prejudice for lack of jurisdiction. *Id.* at 1344.

On remand, the plaintiffs moved to amend their complaint to allege more facts about their injuries. In their proposed amended complaint, they alleged the following facts:

- Multiple organizational plaintiffs include members who visit the monument to pay their respects to those it memorializes. The members intend to continue to gather, and their political speech is rendered less effective by the removal of the monument.

- Multiple organizational plaintiffs include members who regularly gather at the monument to engage and educate the public.

3

- One plaintiff's ancestors collected donations for and erected the monument. She also honors the war dead at the monument and wishes to continue to do so.

- One plaintiff gathered at the monument when it was at the old park, and spoke there.

- Multiple plaintiffs publish literature about the monument.

The plaintiffs sought an injunction against the City requiring it to return the monument to its original location. The district court denied the motion to amend. The district court explained that amendment was futile because the plaintiffs failed to allege sufficiently concrete injuries. The district court also held that even if the plaintiffs did allege sufficiently concrete injuries, it would deny the motion to amend because the facts that the plaintiffs alleged didn't amount to a meritorious First or Fourteenth Amendment claim.

The plaintiffs appealed.[1]

# I

To establish Article III standing, a plaintiff must allege (1) an "injury in fact," which means "an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or

---

[1] We review an order denying a motion to amend for futility de novo. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011).

hypothetical"; (2) a "causal connection" between the "injury and the challenged action of the defendant"; and (3) a likelihood that a favorable judgment will "redress [the] injury." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (quotation marks omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because standing implicates jurisdiction, "a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Lewis*, 944 F.3d at 1296.

On appeal, the City argues that the plaintiffs' injuries remain insufficiently "concrete" and "particularized." An injury is "concrete" when it is "*de facto*" and "real," rather than merely "abstract." *Gardner*, 962 F.3d at 1341. An injury may be real even when it injures only the plaintiff's interest in observing or using something. *See Lujan*, 504 U.S. at 562–63. If a plaintiff seeks injunctive relief, like here, the plaintiff must demonstrate a plan to observe or use that space in the near future that is obstructed by the challenged action. *Id.* at 563–64. An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. It must be distinct to the plaintiff rather than "undifferentiated." *Gardner*, 962 F.3d at 1342.

Here, some of the plaintiffs' newly alleged injuries are sufficiently "concrete" and "particularized" to meet Article III's demands. Namely, multiple plaintiffs allege that they visit the monument regularly and have concrete plans to

visit the monument again in the future.  They allege that their planned future use and enjoyment of the monument is obstructed by the City's relocation of it.  These are the sorts of future injuries that were missing in *Lujan* and that are concrete for Article III purposes.  The injuries are also particularized because they injure only those people who regularly visit the monument and plan to do so in the near future, rather than the undifferentiated public.  These plaintiffs also satisfy the other two elements of standing doctrine because they allege that the City caused the injury by moving the monument and because their injury can be redressed via the requested injunction to have it returned.

## II

But those plaintiffs who have standing must also demonstrate that the district court erred in holding that they failed to state a claim on the merits.  And we think the district court correctly concluded that they failed to state a claim, as to both their First and Fourteenth Amendment claims.

The plaintiffs' First Amendment claim alleges that the City's relocation of the monument violated their rights under the Free Speech Clause.  Monuments in public parks, even when funded by private parties, constitute government speech. *Pleasant Grove City v. Summum*, 555 U.S. 460, 470–73 (2009).  Government speech doesn't violate the Free Speech Clause of the First Amendment.  *Id.* at 467.

6

On the facts alleged, then, the City's relocation of the monument didn't violate the plaintiffs' rights under the Free Speech Clause of the First Amendment.[2]

The plaintiffs' Fourteenth Amendment claim alleges that the City's relocation deprived them of a liberty interest without due process of law. When the government doesn't deprive someone of a constitutionally protected liberty or property interest, it doesn't violate the Due Process Clause of the Fourteenth Amendment. *See AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). The plaintiffs here didn't allege that the City deprived them of any constitutionally protected liberty or property interest by relocating the monument. Therefore, on the facts alleged, the City didn't violate the Due Process Clause of the Fourteenth Amendment.

### III

Because the plaintiffs' only two federal-law claims would fail on the merits, we agree with the district court that amendment was futile. Accordingly, we **AFFIRM**.

---

[2] The plaintiffs also invoke the First Amendment's "endorsement" test, a concept borrowed from Justice O'Connor's concurrence in *Lynch v. Donnelly*, 465 U.S. 668 (1984). But that test—regardless of its viability after *Town of Greece v. Galloway*, 572 U.S. 565 (2014), and *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019)—proscribes only government speech that "endorse[s] or disapprov[es] of *religion*." *Lynch*, 465 U.S. at 688 (O'Connor, J., concurring) (emphasis added); *see also Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 592–94 (1989). The plaintiffs haven't alleged that the City's relocation of the monument expressed endorsement or disapproval of any religion.