[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14003

_____

LADIES MEMORIAL ASSOCIATION, INC.,

RANDALL CROOKE,

Individually and as representative of the

Stephen Russell Mallory Camp 1315,

Sons of Confederate Veterans,

SAVE SOUTHERN HERITAGE INC,

Florida chapter,

VETERANS MONUMENTS OF AMERICA, INC.,

Plaintiffs-Appellants,

versus

CITY OF PENSACOLA, FLORIDA,

a municipality,

FLORIDA SECRETARY OF STATE,

2                    Opinion of the Court                    20-14003

In her official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cv-05681-MCR-EMT

_____

_____

No. 21-11072

_____

LADIES MEMORIAL ASSOCIATION, INC.,
RANDALL CROOKE,
Individually and as a representative of the
Stephen Russell Mallory Camp 1315,
Sons of Confederate Veterans,
SAVE SOUTHERN HERITAGE INC,
Florida Chapter,
VETERANS MONUMENTS OF AMERICA, INC.,

Plaintiffs-Appellants,

*versus*

CITY OF PENSACOLA FLORIDA,
SECRETARY OF STATE OF THE STATE OF FLORIDA,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cv-05681-MCR-EMT

————————————

Before NEWSOM, TJOFLAT, and ED CARNES, Circuit Judges.

TJOFLAT, Circuit Judge:

This case is a topsy-turvy procedural mess.  And, today, we are prevented from joining in the chaos because neither we nor the District Court has subject matter jurisdiction over this case.

## I.

The short story is that several organizations and an individual sued the City of Pensacola and the Secretary of State of Florida in state court because the Pensacola City Council voted to remove a Confederate cenotaph (a monument standing 50 feet tall) from one of Pensacola's city parks.  The complaint included both federal and state constitutional claims, a claim under 42 U.S.C. § 1983, and state statutory and common-law claims.  The City was properly

served with process, but the Secretary of State was not.  The City removed to federal court.  The plaintiffs filed a motion for remand on the basis that the Secretary of State had not properly consented to removal as one of the defendants.  *See Bailey v. Janssen Pharm., Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008) (explaining that the unanimity rule of removal requires all defendants to consent to and join a notice of removal for it to be proper).  The District Court denied the motion to remand because the Secretary of State had not been properly served with process, so she need not have consented to removal.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540–41, 59 S. Ct. 347, 350 (1939) (explaining that consent for removal is not required from defendants who were not properly served in state court).

Next, the City filed a motion to dismiss, to which the plaintiffs did not properly respond.  Instead of filing a memorandum in opposition to the motion to dismiss as was required by Local Rule 7.1 of the Northern District of Florida,[1] the plaintiffs filed a proposed amended complaint (basically seeking leave to amend their original complaint).  That proposed amended complaint, while containing more plaintiffs and more robust allegations of standing,

---

[1] "A party who opposes [a] motion must file a memorandum in opposition. Unless otherwise ordered, the deadline for a memorandum opposing a motion (other than a summary-judgment motion) is 14 days after service of the motion, without a 3-day extension based on electronic service of the motion. The deadline and other requirements that apply to a summary-judgment motion are set out in Local Rule 56.1."  N.D. Fla. Loc. R. 7.1(E).

was scrubbed of all federal claims, leaving only a few passing references to federal law. The District Court dismissed the case as against the City without prejudice because the plaintiffs had failed to follow Local Rule 7.1,[2] which would have required the plaintiffs to file a response to the motion to dismiss. The District Court also denied leave to amend the complaint because it said amendment would be futile on both standing and merits grounds.

Next, the plaintiffs filed a motion for reconsideration of their motion to remand back to state court, which the District Court again denied, because the Secretary of State had not been properly served at the time the City removed to federal court.[3] Finally, waiving the defects in service of process, the Secretary of State appeared, consented to removal, and filed a motion to dismiss, which the District Court granted without prejudice because, again, the plaintiffs did not respond to the motion to dismiss in accordance with Local Rule 7.1. Now, the plaintiffs are appealing three things: 1) the denial of leave to file a proposed amended complaint; 2) the District Court's grant of the City's and the Secretary's motions to

---

[2] "The Court may deny a moving party's motion if the party does not file a memorandum as required by this rule. The Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule." N.D. Fla. Loc. R. 7.1(H).

[3] At this point, the plaintiffs could have voluntarily dismissed and refiled in state court because the State had not yet responded to the plaintiffs' second attempt at service of process. Fed. R. Civ. P. 41(a)(1)(A)(i). But they chose not to do so.

dismiss; and 3) the District Court's denial of the motion for reconsideration of remand back to state court.[4] Because the plaintiffs do not have standing based on the original complaint, we must reverse the District Court's dismissal of the plaintiffs' complaint and instruct the District Court to remand the case back to state court.

## II.

The original complaint includes the following plaintiffs: 1) The Ladies Memorial Association, Inc., 2) Randall Crooke, 3) The Stephen Russell Mallory Camp 1315 of the Sons of Confederate Veterans, 4) Save Southern Heritage, Inc., and 5) Veterans Monuments of America, Inc. Here is what we know from the complaint: The Ladies Memorial Association, Inc., helped to build the cenotaph in 1887 after a state commission approved the erection of a monument in the park. The Ladies Memorial Association, Inc., and the Sons of Confederate Veterans organizations have used the site of the cenotaph for memorial observances, most recently in April 2020. The Sons of Confederate Veterans organization has spent thousands of dollars maintaining the cenotaph. Randall Crooke is a taxpayer resident of Pensacola, FL, descended from a Confederate soldier, and he is a member of the local chapter of the Sons of Confederate Veterans, the Stephen Russell Mallory Camp 1315. The Stephen Russell Mallory Camp 1315 comprises those

---

[4] The case against the City [Case No. 21-11072] and the case against the Secretary of State [Case No. 21-14003] were originally in two separate dockets that were consolidated on appeal.

descended from Confederate soldiers and sailors. Save Southern Heritage, Inc., is a non-profit corporation dedicated to historic preservation. It has a Florida chapter with members who reside in Pensacola. Veterans Monuments of America, Inc., is a Florida not-for-profit corporation whose purpose is to protect memorials to American veterans.

Plaintiffs put forth a variety of federal claims,[5] alleging various harms they would experience if the cenotaph were permanently removed.[6] Plaintiffs allege a violation of their First Amendment rights because "removing the Cenotaph's memorial speech is eliminating their constitutionally guaranteed freedom of expression and speech rights." Plaintiffs also allege a violation of their Fifth Amendment right to Due Process based on the City's procedures for removing the cenotaph and a violation of their Equal Protection rights under the Fourteenth Amendment because only a Confederate cenotaph (and not other monuments) is being removed from the City. Finally, plaintiffs allege a § 1983 violation because "the City acted under of [sic] color of state law in violation

---

[5] The plaintiffs also put forth state statutory and common-law claims, which are irrelevant for purposes of determining whether there is federal subject matter jurisdiction in a federal question case. So, we do not address plaintiffs' standing on those claims.

[6] The District Court set the temporary restraining order, which held removal of the cenotaph in abeyance, to end on September 7, 2020, but this temporary restraining order ended when the District Court granted the City's motion to dissolve the temporary restraining order on September 2, 2020.

8                    Opinion of the Court                    20-14003

of protected rights." Plaintiffs allege that if the cenotaph were removed, the area would lose state funding for historic preservation, which would be "of irreparable harm (including economic harm) to the Plaintiffs as taxpayers and citizens."

The Ladies Memorial Association, Inc., the Sons of Confederate Veterans, and Randall Crooke "assert their reputation and that of their family members would be irreparably demeaned with removal." And Save Southern Heritage, Inc., says that it "will suffer in that this significant part of Southern history in Florida would be eliminated, as there are no plans to ever restore it in any location." Veterans Monuments of America, Inc., alleges that if the cenotaph were removed the honor due to Confederate soldiers would be irreparably harmed. And the plaintiffs all allege that they would be irreparably harmed if the District where the cenotaph is located were dissolved, and they think the District would be dissolved if the cenotaph were permanently removed. They also say that removing the cenotaph would hurt the State's mission of historic preservation. That is the extent of alleged injury.

Standing requires the plaintiffs to allege enough facts to establish injury-in-fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992); *Warth v. Seldin*, 422 U.S. 490, 514–17, 518, 95 S. Ct. 2197, 2215 (1975) (evaluating what the plaintiff's complaint alleged to determine whether there were sufficient facts upon which to base standing and explaining that "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to

invoke judicial resolution of the dispute and the exercise of the court's remedial powers"); *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924 (11th Cir. 2020) (en banc) ("[W]e are powerless to create jurisdiction by embellishing a deficient allegation of injury." (internal quotation marks and citation omitted)).

The problem with the plaintiffs' allegations for standing purposes is that they do not amount to an injury we recognize under Article III. *See Gardner v. Mutz*, 962 F.3d 1329, 1338 (11th Cir. 2020) (explaining that an injury in fact for standing purposes is a "legally protected interest" that is both "concrete and particularized" and "actual or imminent" (internal quotation marks and citations omitted)). Under *Diamond v. Charles*, purely psychic injuries, like disagreeing with government action, are not concrete, so they do not give rise to standing. *Diamond v. Charles*, 476 U.S. 54, 67, 106 S. Ct. 1697, 1706 (1986). And a mere recitation that the Government is violating one's constitutional rights is not concrete enough to establish standing. *Gardner*, 962 F.3d at 1341 ("But surely the naked recitation of a constitutional claim isn't sufficient [to give rise to standing]; if it were, every §1983 plaintiff would, by definition, have standing to sue."). Most of the plaintiffs' allegations of harm go only to the general disagreement with taking down the cenotaph and a general notion that such action by the government would violate their constitutional rights, both of which fall short of the concreteness standard under *Gardner* and *Diamond* respectively.

Plaintiffs' other vague allegations, like the removal of the cenotaph hurting the preservation of the history of the State of Florida, are not concrete enough to establish standing. *See id.* And the plaintiffs ultimately being sad about the cenotaph being taken down does not give rise to standing.[7] *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86, 102 S. Ct. 752, 765 (1982) (holding that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms"). Finally, some of the plaintiffs claim to be Pensacola taxpayers. But they never allege the cenotaph would be removed with municipal taxpayer dollars, so that basis cannot give rise to standing.[8] *See Pelphrey v. Cobb Cnty.*, 547 F.3d 1263, 1280

---

[7] As to any proposed reputational harm, the plaintiffs' allegations are so conclusory that they do not meet the *Twombly*/*Iqbal* standard that governs all pleading these days. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81, 129 S. Ct. 1937, 1950–51 (2009); *Bell Atlantic Corp v.* Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Plaintiffs never tell us how removing a cenotaph affects their reputation or that of their families.

[8] We note that we have analyzed standing under the original complaint and not the proposed amended complaint. Even if we had analyzed standing under the proposed amended complaint, we would come to the same conclusion that subject matter jurisdiction does not exist because there are no federal claims in the proposed amended complaint, nor is there diversity jurisdiction. So, removal based on federal question jurisdiction would no longer stand, and removal cannot be based on diversity jurisdiction. One of the many mysteries of this case is that the plaintiffs, who want to be in state court, simultaneously

20-14003            Opinion of the Court            11

(11th Cir. 2008) (explaining that municipal taxpayers must establish that taxpayer funds were used to have standing to challenge "expenditures by local governments"). So, none of the plaintiffs have Article III standing. And the question we must now answer is what the District Court's next move should have been had it properly realized that it did not have subject matter jurisdiction over this case.

## III.

When a civil case has been removed from state court to federal court, a district court must remand that removed case back to state court when the district court does not have subject matter jurisdiction. *McGee v. Solicitor Gen. of Richmond Cnty.*, 727 F.3d 1322, 1326 (11th Cir. 2013) (per curiam). 28 U.S.C. § 1447(c) says as much: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The District Court had an independent obligation to make sure that it had subject matter jurisdiction, and standing is a part of subject matter jurisdiction. *McGee*, 727 F.3d at 1326.

When a case is removed from state to federal court and the plaintiffs do not have Article III standing in federal court, the

---

beefed up their standing allegations and removed any federal claims from their proposed amended complaint, on the one hand bolstering their Article III standing to be in federal court and on the other hand simultaneously removing any federal question on which subject matter jurisdiction could be based.

district court's only option is to remand back to state court. *See id.* ("Absent standing, the District Court lacked subject matter jurisdiction."); 28 U.S.C. § 1447(c). The problem in this case can be boiled down to the fact that the District Court dismissed a removed case rather than remanding it back to state court when it did not have subject matter jurisdiction because the plaintiffs lacked standing. And, for that reason, we reverse the District Court's dismissal of the plaintiffs' complaint with instructions for the District Court to remand this case back to state court under 28 U.S.C. § 1447(c) where it belongs.

**REVERSED.**